<pre>
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                      JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA         Case No. 3:19-cr-215-MMH-PDB

 4   v.                              December 4, 2024

 5   JEREMIAH BEZROUKOFF             9:36 a.m. - 11:09 a.m.
     and DAVID FUNES,
 6                                   Courtroom 10B
          Defendants.
 7   _____

 8

 9                          SENTENCING

10

11             BEFORE THE HONORABLE MARCIA M. HOWARD
                    UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18   OFFICIAL COURT REPORTER:

19   Katharine M. Healey, RPR, RMR, CRR, FPR-C
     PO Box 56814
     Jacksonville, FL 32241
20   (904) 301-6843
     katharinehealey@bellsouth.net
21

22

23                          (Proceedings reported by stenography;
                             transcript produced by computer.)
24

25
</pre>

1                    <u>A P P E A R A N C E S</u>

2

3    COUNSEL FOR THE GOVERNMENT:

4    **MICHAEL COOLICAN, ESQUIRE**
     U.S. Attorney's Office
     300 North Hogan Street, Suite 700
5    Jacksonville, FL 32202

6

     COUNSEL FOR DEFENDANT JEREMIAH BEZROUKOFF:
7

8    **DONALD B. MAIRS, ESQUIRE**
     The Mairs Law Firm
     1514 Landon Avenue
9    Jacksonville, FL 32207

10

     COUNSEL FOR DEFENDANT DAVID FUNES:
11

12   **DAVID A. MAKOFKA, ESQUIRE**
     Makofka & Makofka
     1400 Prudential Drive, Suite 1
13   Jacksonville, FL 32207

14

15

16

17

18

19

20

21

22

23

24

25

1                           I N D E X

2    GOVERNMENT'S PROFFER............................... PAGE 16

3    DEFENDANT FUNES' PROFFER BY MR. MAKOFKA............ PAGE 19

4    STATEMENT BY DEFENDANT FUNES....................... PAGE 22

5    DEFENDANT BEZROUKOFF'S PROFFER BY MR. MAIRS........ PAGE 26

6    STATEMENT BY DEFENDANT BEZROUKOFF.................. PAGE 28

7    DISCUSSION RE: FORFEITURE.......................... PAGE 34

8    PRONOUNCEMENT OF SENTENCE BY THE COURT............. PAGE 38

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2    December 4, 2024                           9:36 a.m.

3                          -   -   -

4            COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Marcia Morales Howard presiding.

7            Please be seated.

8            THE COURT:  All right.  This is Case No.

9    3:19-cr-215-MMH-PDB, *United States of America vs. Jeremiah*

10   *Bezroukoff and David Funes*.

11           Mr. Coolican is here on behalf of the United States.

12           MR. COOLICAN:  Good morning, Your Honor.

13           THE COURT:  Good morning.

14           Mr. Makofka is here on behalf of Mr. Funes.

15   Mr. Funes is in the courtroom.

16           MR. MAKOFKA:  Good morning, Your Honor.

17           THE COURT:  Good morning.

18           Mr. Mairs is here on behalf of Mr. Bezroukoff.

19           MR. MAIRS:  Good morning, Your Honor.

20           THE COURT:  Good morning.  And Mr. Bezroukoff is in

21   the courtroom.

22           And we're scheduled for a sentencing, although I

23   guess it's sort of more of a continuation of a sentencing

24   because we started back on November 23rd of 2021.

25           Where we left it at that time was I had heard all of

1    the arguments and -- but in light of some of the additional

2    information that I learned at that sentencing, I -- and the

3    fact that I had not conducted the sentencings of any of the

4    other individuals, we ended up agreeing that we would simply

5    hold the matter as it was and I would complete the sentencing

6    later.  At the time we didn't expect it to be three years

7    later; nor did we expect any of the things that have transpired

8    to have occurred.

9          And so we're in kind of an unusual circumstance that

10    I cannot simply impose sentence based on what we did before

11    because the guidelines are different now.

12          So I think what I would propose is that we restart

13    the sentencing, but all of the testimony that I received

14    previously in mitigation, I think we can simply incorporate.

15    And I will tell you-all that yesterday I reread everything that

16    was presented, including the transcript from the previous

17    hearing, so that I could incorporate that.

18          But I think we have to restart with determining the

19    guidelines and go from there.  So that's my thought.

20          Mr. Coolican, did you have a thought as to how we

21    should proceed?

22          MR. COOLICAN:  Your Honor, I agree with the Court,

23    starting fresh is probably smart.  But I also reviewed the

24    transcript of the last proceeding, and I don't think it would

25    be necessary for the Court to hear from those individuals

1    again.

2            THE COURT:  Okay.

3            Mr. Makofka, is that acceptable to Mr. Funes?

4            MR. MAKOFKA:  It is, Your Honor, with the minor

5    exception that my client -- it's been a long time coming,

6    obviously, since the last time we were here, and he does have

7    some comments that he would like to address to Your Honor

8    before the imposition of sentence.  They'll be brief, but he

9    would like to address the Court.

10           THE COURT:  Certainly.  And I didn't -- I wasn't

11   intending to pretermit that.  I was simply wanting to make sure

12   you-all didn't feel like you had to present all of the

13   mitigating testimony --

14           MR. MAKOFKA:  Understood.

15           THE COURT:  -- that we heard last time.

16           MR. MAKOFKA:  Thank you, Your Honor.

17           THE COURT:  Mr. Mairs, from Mr. Bezroukoff's

18   perspective, what's your thought?

19           MR. MAIRS:  We agree with the Court's proposition as

20   to how to handle this case today, so . . .

21           THE COURT:  Okay.  All right.  So with that, let me

22   just get a couple of pages of notes out of here that I need.

23           Okay.  So I'll start with Mr. Funes.  On

24   December 13th of 2019 you entered a plea of guilty to Counts

25   One, Three, and Five of the indictment.

1           Count One charged you with conspiracy to commit

2    health care fraud, in violation of Title 18, United States

3    Code, Sections 1349 and 1347.

4           Count Three charged you with receipt of a kickback in

5    connection with a healthcare benefit program, in violation of

6    Title 42, United States Code, Section 1320a-7b(b)(1)(A).

7           And Count Five charged you with illegal monetary

8    transaction, in violation of Title 18, United States Code,

9    Sections 1957 and 2.

10          The Court has accepted your guilty plea, and so we're

11   once again at the stage of the proceedings where it's necessary

12   to determine an appropriate sentence.

13          DEFENDANT FUNES:  Yes, Your Honor.

14          THE COURT:  I know we talked about this before, but

15   there's a process that we follow in federal court for

16   sentencing, and it begins with the preparation of a presentence

17   report.  And the next thing that's supposed to happen is you're

18   supposed to review that presentence report with your attorney.

19   Did you --

20          DEFENDANT FUNES:  Yes, Your Honor.

21          THE COURT:  And in this case there's been a new

22   presentence report since you and I last spoke.  So have you

23   reviewed that revised presentence report with your attorney?

24          DEFENDANT FUNES:  Yes, Your Honor.

25          THE COURT:  And did Mr. Makofka answer any questions

1    that you may have had about it?

2           DEFENDANT FUNES:  Yes, Your Honor.

3           THE COURT:  All right.

4           Mr. Makofka, have you had sufficient opportunity to

5    review the revised PSR with this gentleman?

6           MR. MAKOFKA:  Yes, Your Honor.

7           THE COURT:  Does he have any outstanding objections

8    to the factual statements or the guideline calculations?

9           MR. MAKOFKA:  No, Your Honor.

10          I did, however, observe just a scrivener's error that

11   I wanted to put on the record.  On page 13 of the final PSR

12   there is paragraph 72, it reads, "According to records from

13   Wekiva Springs in Jacksonville, the defendant checked himself

14   into Wekiva Springs on October 24th, 2012."  And then we have a

15   release date that should be 2012 instead of 2021.

16          That's all I'll add, Your Honor.

17          THE COURT:  Yes.

18          Mr. Coolican, any objection to that correction?

19          MR. COOLICAN:  No, Your Honor.

20          THE COURT:  All right.  I'll ask the probation

21   officer to make that correction.

22          PROBATION OFFICER:  Yes, Your Honor.

23          THE COURT:  Thank you.  I didn't catch that,

24   Mr. Makofka.

25          Mr. Coolican, any objection to the factual statements

1    or the guideline calculations with respect to Mr. Funes?

2              MR. COOLICAN:  Your Honor, in paragraph 108 there's

3    a -- there's a reference to an inability to determine specific

4    losses that pertain to this particular defendant for the

5    purpose of restitution.

6              There were a series of hearings yesterday in related

7    cases which are identified in the PSR on pages 2 and 3 in which

8    the United States took the position that given the undisputed

9    facts in the PSR and the admissions in the plea agreement, the

10   Court could order restitution and set an amount equal to the

11   amount that the individual defendants received in that case.

12   And I'm going to make the same objection as to Mr. Bezroukoff's

13   PSR as well.  That remains our position.

14             We understand that the Court ruled against us

15   yesterday.  I don't expect that the Court would rule

16   differently today, but I'd like to just note that for the

17   record.

18             THE COURT:  Okay.  All right.  So with respect to

19   Mr. Funes, the United States objects to the statement in

20   paragraph 108 that TRICARE's specific losses as they pertain to

21   the instant case and this particular defendant's involvement,

22   that those losses are unknown.

23             And I previously determined that while -- while we

24   can, from the admissions of the defendants -- and Mr. Coolican

25   has indicated he's going to make the same objection to

1    Mr. Bezroukoff's PSR, and I'm simply going to make the same

2    ruling.  And so what I'm about to say relates equally to both

3    gentlemen, and that is the admissions in the plea agreement and

4    the factual statements in the presentence report certainly

5    reflect the amount of the gain to these defendants, and for

6    that reason I think are appropriate for the determination of

7    forfeiture.

8         Restitution is different.  Restitution is the loss to

9    the victim.  And I have to determine the loss specifically

10   caused by each defendant -- the amount of that loss that was

11   specifically caused by each defendant, in order to award that

12   amount of restitution.  Now, it doesn't have to be precise, it

13   just has to be a reasonable determination.

14        But the difficulty, as I said yesterday, that I have

15   in doing that is that there's nothing in the factual basis or

16   in the presentence report that allows me to determine what

17   percentage or what number of prescriptions paid for by TRICARE

18   were actually fraudulent prescriptions, particularly given what

19   the evidence at the trial was.  There was certainly evidence of

20   legitimate prescriptions that were written, or at least that

21   were -- whether they were legitimate or not, where there wasn't

22   evidence that those prescriptions were the result of health

23   care fraud and -- or for me to determine what TRICARE's losses

24   are that related to the illegal kickbacks.

25        And so certainly TRICARE suffered losses, but I

1    simply don't have sufficient information to determine the

2    amount of TRICARE's losses that are caused -- factually related

3    and caused by these defendants.  And I don't think that using

4    the gain is an appropriate substitute for determination of

5    loss.  I think it's appropriate for forfeiture, but I don't

6    think it's appropriate for loss.  And so for those reasons, I

7    find that I don't have sufficient information to reasonably

8    determine the amount of restitution that is proper for each

9    defendant.  And for that reason I'll overrule the objection to

10   paragraph 108 in Mr. Funes' presentence report.  And we'll

11   identify it in Mr. Bezroukoff's shortly, but I'll also overrule

12   it there.

13          And I'll further put on the record that ordinarily I

14   would give the government -- I would set the restitution

15   hearing off and give the government an opportunity to establish

16   the amount of restitution.  But Mr. Coolican, as I understand

17   it, the government is not requesting that and simply concedes

18   that it has no further evidence.

19          Is that correct?

20          MR. COOLICAN:  It's correct that we're not requesting

21   that hearing, Your Honor, and that we don't intend to put on

22   additional evidence.

23          THE COURT:  Okay.  That's fair.  Okay.

24          So then I'll turn to -- so for Mr. Funes that means

25   that we have a Total Offense Level before addressing the 5K of

1   14; his Criminal History Category is I, which yields a

2   guideline term of imprisonment of 15 to 21 months, which is

3   significantly less than the original guidelines were when we

4   convened three years ago, a term of supervised release of one

5   to three years, restitution, which is mandatory, but for the

6   reasons I've just stated the Court will not award restitution,

7   fines raining from 4,000 to $40,000, and a $300 special

8   assessment.

9          Mr. Makofka, is that consistent with your

10  understanding?

11         MR. MAKOFKA:  It is, Your Honor.

12         THE COURT:  All right.  Turning to Mr. Bezroukoff.

13  Mr. Bezroukoff, on December 13th of 2019 you entered a plea of

14  guilty to Counts One, Two, and Four of an information.

15         Count One charged you with conspiracy to commit

16  health care fraud, in violation of Title 18, United States

17  Code, Sections 1349 and 1347.

18         Count Two charged you with receipt of a kickback in

19  connection with a health care fraud benefit program, in

20  violation of Title 42, United States Code, Section

21  1320a-7b(b)(1)(A).

22         And Count Four charged you with an illegal monetary

23  transaction, in violation of Title 18, United States Code,

24  Sections 1957 and 2.

25         The Court has accepted your guilty pleas, and we are,

1  once again, here to determine the appropriate sentence in your

2  case.

3       The probation office has prepared a revised

4  presentence report as it relates to you.  Did you have an

5  opportunity to review that revised presentence report?

6       DEFENDANT BEZROUKOFF:  Yes, Your Honor.

7       THE COURT:  Did your attorney answer any questions

8  that you may have had about it?

9       DEFENDANT BEZROUKOFF:  Yes, Your Honor.

10      THE COURT:  And Mr. Mairs, did you have sufficient

11  opportunity to review the PSR with this gentleman?

12      MR. MAIRS:  I did, Your Honor.

13      THE COURT:  Does he have any outstanding objections

14  to the factual statements or the guideline calculations?

15      MR. MAIRS:  He does not.

16      THE COURT:  Mr. Coolican, I understand the government

17  maintains its objection to paragraph 99 with regard to

18  restitution; is that correct?

19      MR. COOLICAN:  That's correct, Your Honor.

20      THE COURT:  And for the reasons I just stated, I

21  overrule that objection.

22      Are there any other objections to the factual

23  statements or the guideline calculations?

24      MR. COOLICAN:  Not so much an objection, Your Honor,

25  but just to point out a scrivener's error in paragraph 33.  It

1   states both that the adjusted offense level is 19 but then also

2   21.  I think it's clear that 21 is the correct level.

3           THE COURT:  It looks like that might have been a

4   carryover from Mr. Funes?  Six -- yeah, that looks -- I think

5   Mr. Coolican is correct, that it should be 21.

6           Mr. Mairs, do you agree with that?

7           MR. MAIRS:  I do.

8           THE COURT:  All right.  Should we make that change?

9           PROBATION OFFICER:  Yes, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          Thank you, Mr. Coolican.

12          All right.  So there being no other objections, and

13  then with that correction, the Court accepts the factual

14  statements set forth in the presentence report as the Court's

15  findings of fact and determines that the guidelines applicable

16  to Mr. Bezroukoff are:  Total Offense Level of 16, Criminal

17  History Category is I, which yields a guideline term of

18  imprisonment of 21 to 27 months, one to three years supervised

19  release, mandatory restitution, that the Court will not impose,

20  fines ranging from $5,000 to $50,000, and $300 in special

21  assessments.

22          Mr. Mairs, is that consistent with your

23  understanding?

24          MR. MAIRS:  Yes, before the application of 5K.

25          THE COURT:  Yes.  All right.  The United States did

1   file on behalf of both of these gentlemen motions for downward

2   departure.  In Mr. Bezroukoff's case it is document number 49,

3   in which the government sought a four-level reduction of the

4   defendant's offense level; and in Mr. Funes' case it is

5   document number 50, in which the government sought a four-level

6   reduction in the defendant's offense level.

7          At the hearing that I previously held on

8   November 23rd of 2021, I ruled on those motions after hearing

9   argument from Ms. Hackenberry, who was the lead prosecutor in

10   the case, as well as arguments on behalf of Mr. Bezroukoff and

11   Mr. Funes.  And at the time the transcript reflects that I

12   granted the motions and departed downward by six levels as to

13   Mr. Bezroukoff and by five levels as to Mr. Funes.

14          Mr. Coolican, is there any reason why I shouldn't

15   simply adopt those findings for purposes of sentencing today?

16          MR. COOLICAN:  Your Honor, I think the Court should

17   adopt those, although I will acknowledge that both defendants

18   have continued to at least make themselves available for

19   testimony if the case had to be retried.  They did make

20   themselves available.  We never had to meet with them to prep

21   or anything like that, but I would acknowledge that they've

22   continued to comply with the cooperation provisions.

23          THE COURT:  Okay.  Thank you.

24          Mr. Makofka, any reason why I shouldn't adopt my

25   previous finding?

1          MR. MAKOFKA:  No, Your Honor.

2          THE COURT:  All right.  Mr. Mairs?

3          MR. MAIRS:  No, Your Honor.

4          THE COURT:  Okay.  So as to Mr. Bezroukoff, that

5    changes the offense level to 10, with a Criminal History

6    Category of I.  His guideline term of imprisonment becomes 6 to

7    12 months.

8          So for clarity of the record, I grant the motion for

9    downward departure, document number 49, and depart downward,

10   recognizing Mr. Bezroukoff's substantial assistance by six

11   levels.

12         And as to Mr. Funes, I grant the motion for downward

13   departure, document number 50, and depart downward by five

14   levels, which takes us to a Total Offense Level of 9, Criminal

15   History Category I, which yields a guideline term of

16   imprisonment of 4 to 10 months.

17         So with that we have determined the guidelines.

18         Mr. Coolican, I'll hear from you as to the

19   government's recommendation.

20         MR. COOLICAN:  Thank you, Your Honor.  May it please

21   the Court.

22         The Court may recall that Ms. Hackenberry, three

23   years ago, recommended a bottom-of-the-guideline sentence for

24   both defendants' sentences of imprisonment.  A lot has changed

25   since then, and we're changing our recommendations accordingly.

1    We don't believe that either Mr. Funes or Bezroukoff need to be

2    sentenced to prison.

3            Starting with Mr. Funes, his conduct is very similar

4    to a defendant in a related case, Sam Todd, who yesterday was

5    sentenced to time served with no additional supervision to

6    follow.  In the interest of avoiding unwarranted sentencing

7    disparities, I think the same result is appropriate here.

8            And I'll just note that the two of them were similar

9    in some respects and they were different in some respects.  And

10   I would note that Mr. Funes, as described by Ms. Hackenberry at

11   the initial sentencing hearing, was really instrumental in the

12   investigative phase of this case.  And without him and

13   Mr. Bezroukoff, it's unclear that we would even be here with

14   these charged cases.

15           Distinct from that, Mr. Todd, he also had a

16   cooperation plea agreement, but he pled guilty and agreed to

17   cooperate much later in the process, after having been indicted

18   and a couple months before trial.  So if Mr. Todd is the type

19   of person that should receive a time-served sentence, then it's

20   our position that Mr. Funes should also receive that type of

21   sentence.

22           Regarding Mr. Bezroukoff, I think in a normal case,

23   even with his cooperation, this is a defendant where the United

24   States would be seeking a term of imprisonment.  If you read

25   the factual basis of his plea agreement, he's effectively

1   described as a lieutenant of the ringleader of the operation.

2   There's admissions about running the call center.  The fact

3   that he not only recruited patients and doctors like some other

4   defendants in related cases, but that he recruited pharmacies

5   as well.  Responsible for hundreds of prescriptions as part of

6   this scheme, resulting in millions of dollars of TRICARE

7   reimbursements.  And for his pains was profited significantly;

8   over $900,000.  Close to three times what we've seen from any

9   other defendant who's been sentenced in this series of cases.

10  And yet there are facts that distinguish him from the other

11  defendants.

12          And what I'm recommending for Mr. Bezroukoff, which

13  is what I skipped over, is a year of probation.  And the reason

14  we're making that recommendation instead of a term of

15  imprisonment is, as Ms. Hackenberry relayed to the Court

16  previously, he cooperated and he cooperated early.  And the

17  Court saw a portion of that cooperation when he testified at

18  trial.  And I wasn't in the room, but I have spoken with people

19  who were.  And I've read the trial record, and I think he was

20  not only truthful, but was careful in how he testified to

21  ensure that he testified truthfully.  He didn't embellish.  He

22  had every motive to maybe tell the jury what they wanted to

23  hear, but he was careful in ensuring that he was only

24  testifying to what he knew.  And, you know, I don't know who's

25  the -- who's the most significant cooperator in the case, but

1    there's a strong argument that it's Mr. Bezroukoff.

2          Regarding his history and characteristics, it's been

3    argued in this courtroom that veterans who wrap themselves in

4    the flag at sentencing should be embarrassed when they do that.

5    That's not an argument that can be applied to Mr. Bezroukoff.

6    Mr. Bezroukoff went to war when others stayed home.

7          And he wasn't, you know, doing that in a support

8    role.  He was part of the U.S. Special Forces.  And that's to

9    be respected and that's to be commended.  And it's definitely

10   something that the Court should take into consideration in

11   fashioning a sentence.

12          So we're -- you know, the 30-month term of

13   imprisonment that was previously recommended, we're not

14   recommending that.  Times have changed.  But for

15   Mr. Bezroukoff, his conduct was much worse than the defendants

16   who have been previously testified [verbatim] of time served.

17   Some additional sanction is necessary to promote respect for

18   the law, to afford just punishment, but a prison term would be

19   unnecessary.

20          Thank you.

21          THE COURT:  Thank you, Mr. Coolican.

22          Mr. Makofka.

23          MR. MAKOFKA:  Thank you, Your Honor.  May it please

24   the Court.

25          Obviously we're a long way away from where this case

1    started.  You know, I was looking to see when I began my

2    representation of Mr. Funes, and it was sometime I believe

3    under the CJA panel in September of 2016.  So by all accounts,

4    this one is a record for my file cabinet.

5            THE COURT:  I think for all of ours.

6            MR. MAKOFKA:  It is, I have to say.  Eight years of

7    getting to know this man and representing him and being by his

8    side through all of this has afforded me the unique opportunity

9    of getting to know him as a person, certainly as a defendant

10    before this Court.

11            You know, we were -- we were early -- as the

12    government has correctly pointed out, early adopters of the

13    cooperation scheme in this case.  I can recall having proffers

14    with Ms. Hackenberry and others many, many years ago.  And my

15    client has always taken the position that he wanted to right

16    the wrong in connection with his actions.  And I think he's

17    done so certainly by cooperating, by entering a very timely

18    guilty plea, but more than that, by conducting himself

19    wonderfully while on bond.  I mean, there hasn't been a single

20    issue for this gentleman in the five years he's been on

21    supervision and, frankly, tacking the three years that he was

22    cooperating before the plea, eight years of model conduct we

23    have before the Court.  No hint of any issues whatsoever with

24    Mr. Funes.  And I think that speaks volumes about his

25    character.  I think that speaks volumes about the likelihood of

1  any type of recidivism or anything of that nature.  I mean,

2  he's toed the line 100 percent.

3       And beyond that, and I don't want to overstate the

4  obvious, given the government's sentencing recommendation,

5  which frankly we join in.  I think that is an appropriate

6  disposition in this case for this defendant.

7       I would just also point out that, you know, he's had

8  to live with the specter of this date for years.  Eight years

9  of wondering.  Eight years of worrying.  Eight years of being

10  afraid and fearful for what might be.  And that's its own form

11  of torture and punishment I would argue to the Court, apart

12  from having his liberties curtailed and so forth being on bond.

13  He's had to live with the fear of what could be.  And that's a

14  tremendous source of -- for any person, that's a tremendous

15  source of anxiety and concern.

16       And just looking at everything in sum, it would be

17  our request to the Court to sentence this defendant to a

18  time-served sentence with no requirement of additional

19  supervision.  If he's been this good for eight years, I can't

20  imagine what an additional term of monitoring him would produce

21  other than positive results.  And so for those reasons that

22  would be our request of the Court this morning.

23       And I could cut it off here, but I do want the Court

24  to hear from Mr. Funes --

25       THE COURT:  Of course.

1      MR. MAKOFKA:  -- because he is proud of the last

2  three years of his life and how he's turned things around.

3      You know, at our last sentencing hearing I advised

4  the Court that this is a person that has had profound mental

5  health struggles.  He's had drug addiction issues in the past

6  and a litany of problems that would be difficult for any person

7  to overcome.  And he's overcome -- or addressed them, I should

8  say, because in the form of addiction you never really overcome

9  it.  Once an addict, always an addict.

10      But he's prepared to tell you how he's continuing to

11  do good, and not just for himself but for others.  So if the

12  Court pleases, I would like Mr. Funes to come forward and

13  address Your Honor.

14      THE COURT:  I confess that as I was reading the

15  transcript yesterday, one of the things I wondered was how

16  these gentlemen were doing now three years later.  So I would

17  very much like to hear.  Obviously neither of you has to speak,

18  but you do have the right to speak.

19      MR. MAKOFKA:  He would love to speak to the Court.

20      THE COURT:  Sure.  Come on up, Mr. Funes.

21      DEFENDANT FUNES:  Good morning, Your Honor.  I

22  appreciate the opportunity to speak to you again.  And I want

23  to reiterate first of all that I do take responsibility for my

24  actions.  I'm not trying to make any excuses at all.

25      And I'm glad you reread the transcript yesterday.  So

1    I won't go into kind of what we talked about last time with my

2    history of mental illness, but I'll tell you what's happened

3    over the last three years.

4            So start of 2023 is where I'll start with.  I

5    actually lost my job due to -- due to the case.  They ran

6    another background check on me and I had to lose the job

7    subsequently, which I had for five years, you know, did a great

8    job there, was one of the top employees.

9            So from there I've kind of learned through that, you

10   know, what it's like to have a felony on your record and how

11   difficult it is.  I could not get another job in sales for

12   months.  And ended up having to go from living by myself in

13   Austin to moving back in with my parents for a time.  I was

14   finally able to -- I was running out of money, so I finally was

15   able to get a job as a delivery driver delivering boxes at $3 a

16   box, making about $100 a day after gas.  So about $12 an hour.

17   So I know from experience what it's like to have a felony and

18   how I went -- you know, can go from a great job to that.

19           But from that I wanted to stay positive during all of

20   it.  And I was able to get a job at Amazon as a delivery driver

21   after that.  From there, though, I kept applying for other

22   sales jobs.  I was very honest about my background with them

23   because I didn't want to live in fear anymore.  And I finally

24   got an opportunity just recently to do another sales job, so I

25   was ecstatic about that.  The manager was very sympathetic to

1    my bipolar disorder, that I've changed.  She can tell I'm a

2    different person now.  So that's changed for me.  I have at

3    least a job that I'm happy with again after about a year of

4    turmoil.

5         But I think the biggest thing I want to tell you

6    is --

7         THE COURT:  Tell me where you're working.

8         DEFENDANT FUNES:  It's called Generational Group.

9    It's sales.  It is more entry-level sales again, but it's not

10   delivering boxes in 100-degree heat for Amazon, 150 stops a

11   day.  I mean, I learned a lot from the experience; so much, you

12   know, resilience and perseverance from that.  So I'm glad I did

13   it, but that's so different from what I've been used to with

14   sales jobs.  So yeah, it's entry level.  And it's like 150

15   calls a day, so it's tough.  But this is what I enjoy doing at

16   least and I can make -- I can be happy with it.

17        But I think the biggest thing I wanted to tell you is

18   over the past -- I guess especially over the past year, I've

19   tried to use the mess I've made of my life, especially with my

20   mental illness, and that's become my message.  I've been able

21   to start coaching other people with mental illness.  Some of

22   them I do for free; some of them have paid me.  I've started an

23   LLC so I could do that.

24        And I've been helping other people with bipolar

25   especially to try to navigate things since -- as you know from

1  my sentencing report, I've been stable for about seven years

2  now, and a lot of other bipolar people, I've been sharing on

3  social media, and a lot of other bipolar people resonate with

4  the things I've gone through; whether it's addiction, criminal

5  activity, homelessness.  Just a lot of the things I've been

6  through.  And I've been able to help a lot of people through

7  this.

8        So I'm trying to not only turn things around, but

9  help other people.  And that's what I want to do with the rest

10  of my life eventually, is help other people with my story.  So

11  I think that's been one of the biggest changes is I've actually

12  started doing that.  And it's been the most rewarding and

13  fulfilling thing I've ever done in my life.  So I'm very happy

14  where -- that that's hopefully going to be my new life.

15        And, you know, I appreciate the opportunity to speak.

16  But I think that's the main thing I wanted to tell you is those

17  changes.

18        THE COURT:  Well, it's a very hard transition to

19  make.  I've seen a lot of folks try to make that transition and

20  not be successful.  So I commend you on your efforts.  And I

21  know there's not a single moment of it that has been easy.  So

22  you should really be proud of what you've done.  And I

23  certainly wish you the best.

24        DEFENDANT FUNES:  Thank you, Your Honor.

25        MR. MAKOFKA:  And that concludes our remarks before

1    the Court, Your Honor.  Thank you.

2              THE COURT:  Thank you.

3              Mr. Mairs.

4              MR. MAIRS:  Thank you, Your Honor.  I'll be brief.  I

5    know we had a longer sentencing hearing before and a lot of

6    testimony about Mr. Bezroukoff's PTSD.

7              You know, the path perhaps in state court for

8    Mr. Bezroukoff would have been veterans court.  I just can't

9    say it any plainer than that.  It would have been -- he is

10   exactly what it's for.  Unfortunately, that particular resource

11   just, you know, wasn't one we could achieve.  We met recently

12   with the government and once again proposed that.  I think

13   Mr. Bezroukoff may talk about it.

14             But as the government said, his forward position, you

15   know, life in danger.  And when you think about that happening

16   to you, you come back here fairly shortly after, get introduced

17   to Mr. Balotin.  And, you know, he'll probably talk about the

18   things he's learned in getting treatment.  I know prior to

19   Mr. Balotin's case being dismissed there was a request for all

20   of his records from the VA, and those came in.  First they said

21   they didn't have any; then they sent me about two or three

22   inches worth of records, so -- which, as the government said,

23   established exactly what Mr. Bezroukoff talked about during his

24   testimony, what he disclosed.  So I just wanted to make mention

25   of that.

1        Of course, I agree with the Court that I haven't had

2   a case like this and the way -- the twists and turns.  As you

3   know, I wasn't the original lawyer.  Mr. Berry was his lawyer.

4   He passed.  I decided to take it over and shepherd it through.

5   Little did I know.

6        Today is hopefully the day we at least for

7   Mr. Bezroukoff turn a page, because I think, you know, the life

8   on hold for him argues against a term of probation.

9        I think to look at the 3553 factors, you know, the

10  need to protect the public from crimes of Mr. Bezroukoff, I

11  don't think there's a need to do that.  I think, you know, he's

12  had -- probably a lot of it unforeseen, but the length of time

13  he's been on pretrial services, you know, as the other lawyer

14  said, the wonder -- the purgatory of I wonder what's going to

15  happen, I think that operates as a deterrence.

16       I think, you know, a just punishment for him, to me,

17  would be considering time served as well.  I know that the

18  government draws the distinction because of his conduct versus

19  Mr. Funes, I understand that.  But I also think there are

20  factors that you're well aware of that justify that I believe

21  that sort of the general public, or those around it, if they

22  understood the path of Mr. Bezroukoff's case, his PTSD and all

23  that happened, I believe they would understand if the Court

24  were to simply say, you know, you've essentially been on

25  supervision for many years, all of it has been successful, and

1  I believe that would be an appropriate consideration, Your

2  Honor.

3          I think Mr. Bezroukoff would like to speak.

4          THE COURT:  Of course.

5          DEFENDANT BEZROUKOFF:  Your Honor, so just briefly,

6  for the last three years, I think when we walked out of here

7  last time, we were anticipating that we would have been back in

8  here in a shorter period of time.  So --

9          THE COURT:  There's no doubt about that.

10         DEFENDANT BEZROUKOFF:  And so for a little while it

11 was kind of just a waiting game.  And after a while it seemed

12 like, okay, we don't know when we're coming back in here.  I

13 should try to kind of get on with my life.

14         And so like Mr. Funes, I had a difficult time finding

15 a job, but I was able to get a job as a medical courier, which

16 I've been working at for about a year and a half now.  I also

17 went back to school and was able to finish up my bachelor's

18 degree, which I graduated this month with.

19         THE COURT:  Congratulations.

20         DEFENDANT BEZROUKOFF:  Thank you.  And I appreciate

21 that you took the time to read through the transcript and

22 everything that we went over last time, but if you wouldn't

23 mind, I'd really appreciate it if you would allow me to

24 highlight a couple of the things that I had already shared with

25 the Court.

1          THE COURT:  That's fine.

2          DEFENDANT BEZROUKOFF:  Okay.  So a couple days ago I

3     was able to met with the prosecution.  And I'm grateful that

4     they met with me, I'm grateful that you heard me out.  And

5     after speaking with them, I kind of told them about my story.

6     Told them how there was unique circumstances where when I got

7     involved with all this, I had just returned from deployment;

8     literally a matter of weeks before getting back from

9     Afghanistan.  I came down here to visit my girlfriend in

10    Jacksonville.  And through her friends I met Scott Balotin, I

11    met Carter's Pharmacy, and I got involved with this whole

12    scheme.

13          And I shared how at that time I was at the lowest

14    moment of my life, dealing with profound PTSD from deployment.

15    For the first time in my life I had developed an alcohol

16    problem and a substance abuse problem trying to tackle, trying

17    to address everything that I was going through, the mental

18    illness that I had acquired from being overseas with the Army.

19          And so I asked the prosecution, you know, with 500

20    veterans courts in the United States, they are specifically

21    designed and they have been -- they have been stood up to

22    address this issue, this issue that veterans come back with a

23    mental illness that they acquired from defending this country,

24    essentially, and there's an increase in criminal activity.

25    This increase in criminal activity has been addressed by the

1    courts.  It's been addressed by the government.  And that's why

2    they've stood up over 500 VTCs in the last -- since 2008,

3    actually.

4            And so I asked Mr. Coolican, would you please

5    consider any alternative at all?  Any alternative.  Maybe if

6    state side could pick up a charge against me and put me in

7    veterans court, or anything at all where I'm not shackled by

8    the convictions of a felony; something where, you know, I don't

9    end up with a lifelong sentence that severely cripples me for

10   the rest of my life when there's a really good chance that this

11   stemmed -- this all originated from the PTSD that I had brought

12   back with me.

13           And hearing that the prosecution is recommending a

14   year of probation, honestly, a big part of me wants to come in

15   here and say you know what, that's so much better than last

16   time, I'm truly grateful for that.  I mean that.  Thank you.

17   And a big part of me wants to just sit down and shut up and

18   say, that sounds pretty dang good.

19           But I also believe that this stemmed from that mental

20   illness that I acquired.  That there's unique circumstances

21   that I got involved in all of this just a matter of weeks after

22   returning, and that the position that our court system, the

23   position that our government has taken against this, is to

24   attempt to mitigate veterans with PTSD from ending up with

25   criminal sentences that affect them for the rest of their

1    lives.

2          From my understanding, the way that all veterans

3    courts work is that you go through a 12- to 24-month

4    probationary period and then at the end of it they drop and

5    dismiss the charges.

6          And so I fully recognize that I might just be

7    shooting myself here in the foot here today.  But I plead with

8    you, Your Honor, if you feel it in your gut like this could

9    have originated from the PTSD, from the mental illness that I

10   acquired from deployment, if you believe in your heart that I

11   never would have gotten involved with all of this otherwise, I

12   ask you to please consider some alternative.  Any alternative.

13   I don't know if there's somehow I could get into veterans

14   court.

15         THE COURT:  Mr. Bezroukoff, I don't have any ability

16   to set aside your convictions.  There's nothing under the law

17   that allows me to do that.  The only thing that I can determine

18   at this point is a sentence.  So there's absolutely no legal

19   basis and no authority that I have to change the fact that at

20   the end of this case you're a convicted felon.  I'm sorry, but

21   you're not shooting yourself in the foot, but you're just

22   asking me to do something that's not possible.  So I just -- I

23   need to go ahead and tell you that, because there is really

24   nothing that can be done.

25         DEFENDANT BEZROUKOFF:  I understand.

1      THE COURT:  And I'm not telling you to stop speaking.

2    I'm happy to hear from you.  I just want to make sure that you

3    understand that there are things that I have the ability to do

4    and there are things that I do not have the ability to do.  And

5    right now the only thing I have the ability to do is to

6    determine an appropriate sentence in this case.  I cannot

7    change the fact that you've pled guilty and you've been

8    adjudicated guilty of this offense.

9      DEFENDANT BEZROUKOFF:  Okay.

10      THE COURT:  And I suspect Mr. Mairs has probably told

11   you that.

12      MR. MAIRS:  I believe I have explained that the

13   Court, like all of us, have -- the Court has power, the Court

14   has discretion, but there are limits that the Court is bound to

15   follow.  And I think that's why we met with the government,

16   because they have a different set of rules and regulations.

17   But they would be the place, typically in the state side,

18   that's where you go, and they have to approve it.  You can't --

19   there's no, you know, you're entitled to it.  It's a -- so

20   we've talked about it, but, you know, I don't know, you know,

21   whether it's what he wanted to hear, but --

22      THE COURT:  No, I understand.  And I'm fine with us

23   discussing it here.

24      MR. MAIRS:  Yeah.

25      THE COURT:  I just want to -- I think I asked you

1    that question more just to make sure that I'm not missing

2    something that you think that -- that you're aware of.

3          So February of 2007 is when I started doing this job.

4    In that 17-and-a-half years I'm not aware of any ability that

5    the Court has at this stage of the proceedings to change the

6    fact that there is an adjudication of guilt and we're at

7    sentencing.

8          The only thing I -- that I'm aware of that I have the

9    power to do at this hearing is to determine an appropriate

10   sentence.

11         DEFENDANT BEZROUKOFF:  And I understand that, Your

12   Honor.  I guess the technicalities weren't specifically clear

13   for me.  And that was probably just my -- my misunderstanding,

14   to be honest with you.

15         I guess all I can say at this point is that who I was

16   during that time is not reflective of who I am.  As I stand

17   here today, I look at that period of time, and I don't even

18   recognize that person.  You know, I'm not a lifelong criminal.

19   The only conviction on my record aside from this is from when I

20   was 17 years old.  25 years ago I stole a $10 bracelet at the

21   mall.  And otherwise, that's the only other conviction on my

22   record.

23         I'm a disabled veteran diagnosed with PTSD from that

24   combat, from that experience, from that time frame, which

25   supports what I shared with the Court.  And I think it goes

1   without saying that this is an unorthodox case, you know, with

2   unorthodox circumstances.  And I believe that it potentially

3   deserves the consideration for an unorthodox outcome.

4           Thank you for listening to me, Your Honor.

5           THE COURT:  Thank you, Mr. Bezroukoff.

6           Mr. Coolican, anything further from the United

7   States?

8           MR. COOLICAN:  Not in terms of argument, Your Honor.

9   I do want to note that the United States -- two unopposed

10  motions for the entry of forfeiture are still pending.  Those

11  are --

12          THE COURT:  Oh, yes.  Can we talk about those?  I

13  don't -- they're different than the normal ones.  I don't

14  understand them.  You're going to tell me your asset forfeiture

15  people aren't here, but -- so looking at the order of

16  forfeiture, the proposed order of forfeiture that you-all have

17  submitted, the language in it is very different than I usually

18  see.  And I'm confused about what it is attempting to

19  accomplish.

20          So if you look at the last full paragraph, it says:

21  The defendant shall be held liable for an order of forfeiture

22  in the amount of 1,627,175.22.  However, the United States will

23  not collect more than the sum of 680,175.22 collectively from

24  the defendant and codefendant Funes.  And the defendant shall

25  be held liable for an additional 947,343.61.

1       And I think that's the same language in -- well,

2    there's -- the sums are -- there's similar language in

3    Mr. Funes'.  I'm just -- I haven't seen it that way before.

4    And frankly, it confuses me what you're actually attempting to

5    accomplish.

6       MR. COOLICAN:  Your Honor, I suspect what's happening

7    here is we're trying to -- and I wish I could be more

8    definitive, but I think we're trying to address the notion

9    that --

10       THE COURT:  There may be double?

11       MR. COOLICAN:  -- there's double -- there's the

12    possibility of double counting.  And we're trying to avoid

13    that.  The entire -- there's a portion of the amount requested

14    for each individual defendant that passed through both hands,

15    and as such, under recent case law, they can both be found

16    liable for it.  But we're trying to avoid double collection.

17       THE COURT:  So consistent with -- that 1.6 figure,

18    that's based on the previous calculations and not -- not the

19    calculations that are being used currently.  In order to sort

20    of address this, in the proposed order of forfeiture it was

21    holding Mr. Bezroukoff individually liable for 947,343.61,

22    which is the amount of his gain.  And that's the -- that's the

23    figure that's being used in the calculation of the current

24    guidelines.  And then it's holding Mr. Funes accountable for

25    352,000, although the amount of gain that is agreed to in the

1    presentence report is the 369,592.79.

2         Consistent with what I did yesterday, rather than

3    have this sort of complicated -- I guess my thought would be

4    that the total amount of forfeiture as to each individual

5    should be the gain amount, which is what we -- which is what I

6    did yesterday.  So the total 947,343.61 as to Mr. Bezroukoff

7    and 369,592.79 as to Mr. Funes.  So I would be inclined to

8    reduce that.

9         Would it be the United States' position that there

10   should still be the -- well, I think that would do away with

11   the double counting issue and we could simplify the order.

12        MR. COOLICAN:  I agree, Your Honor.

13        THE COURT:  So can I -- and obviously I'm going to

14   hear from you-all on this, but would there be any objection

15   from the United States to me granting the motions in part and

16   denying them in part?  Granting them to the extent that I enter

17   an order of forfeiture in the amount of gain that was

18   calculated for purposes of the loss in the presentence reports?

19        MR. COOLICAN:  Understanding the unique circumstances

20   of this case, there would be no objection, Your Honor.

21        THE COURT:  Okay.  Thank you, Mr. Coolican.

22        Mr. Makofka, that would mean that the order of

23   forfeiture as to your client would be $369,592.79.  Any

24   objection to that?

25        MR. MAKOFKA:  No.  And I think addressing it in that

1  fashion makes the most sense and it simplifies things and I

2  would agree with that.

3         THE COURT:  Mr. Mairs, that means I would be granting

4  the motion as to your client in part and denying it in part to

5  the extent that I would enter an order of forfeiture in the

6  amount of $947,343.61.  Is that acceptable to Mr. Bezroukoff?

7         MR. MAIRS:  Yes, Your Honor.

8         THE COURT:  Mr. Coolican, can your office send a

9  revised order of forfeiture that grants the motions to the

10  extent that we forfeit those amounts and otherwise denies them?

11         MR. COOLICAN:  Yes, Your Honor.

12         THE COURT:  Thank you.

13         Oh, and Mr. Coolican, I needed to ask out loud

14  whether you expected any victim impact statement.

15         MR. COOLICAN:  No, Your Honor.

16         THE COURT:  Okay.

17         All right.  I'm going to take about a ten-minute

18  recess and then I'll be out.

19         Any bar to sentencing, Mr. Coolican?

20         MR. COOLICAN:  No, Your Honor.

21         THE COURT:  Mr. Makofka?

22         MR. MAKOFKA:  No, Your Honor.

23         THE COURT:  Mr. Mairs?

24         MR. MAIRS:  No, Your Honor.

25         THE COURT:  All right.  So we'll take about a 10- or

1   15-minute recess and I'll be out to pronounce.

2          COURT SECURITY OFFICER:  All rise.

3          (Recess, 10:36 a.m. to 10:47 a.m.)

4          COURT SECURITY OFFICER:  All rise.  This Honorable

5   Court is back in session.  Please be seated.

6          THE COURT:  So with regard to Mr. Funes, the

7   government has recommended a sentence of time served with no

8   supervision to follow, similar to the sentences imposed

9   yesterday.  And in particular, similar or the same as the Court

10  imposed with respect to Mr. Todd.  And having considered the

11  relative conduct of both individuals, and their participation

12  in the overall offense conduct, I think that that is an

13  appropriate sentence.  And in particular, as I discussed

14  yesterday, the decision not to impose additional supervision is

15  reflective or is an acknowledgement of the fact that Mr. Funes,

16  like the individuals that I sentenced yesterday, has

17  essentially been under the supervision of the Court for at

18  least the last five years.  And so when I look at the statutory

19  purposes of sentencing, which I'm going to discuss in greater

20  length in a moment with regard to Mr. Bezroukoff, I don't see

21  how any of them are advanced further by simply imposing an

22  additional term of supervised release.

23          Now, Mr. Funes, his guidelines do call for a term of

24  imprisonment.  It's a 4- to 10-month term of imprisonment is

25  his guideline range.  But I am easily persuaded that the mental

1   health challenges that Mr. Funes was facing, that undoubtedly

2   played a significant role in his decision to engage in this

3   conduct, and his self medicating are significant mitigation and

4   warrant the sentence that the government recommends, which is

5   that of time served without supervision to follow.

6           And I think Mr. Funes' post-offense conduct and

7   rehabilitation further supports the conclusion that that is an

8   appropriate sentence for this particular individual under the

9   unique circumstances of this particular case.

10          With regard to Mr. Bezroukoff, the government

11  recommends a term of probation of one year.  And the government

12  makes that recommendation largely based upon the significant

13  role that Mr. Bezroukoff played in the offense conduct.

14          And having sat through the trial, I would concur with

15  the government that Mr. Bezroukoff played a very significant

16  and much more culpable role in the overall offense conduct, as

17  was discussed by Mr. Coolican.  And I still have two defendants

18  that are due to be sentenced, who in my view are much closer to

19  Mr. Bezroukoff in terms of their conduct.  And so I struggle

20  with determining what's an appropriate sentence for

21  Mr. Bezroukoff in order to avoid unwarranted sentencing

22  disparity, not having heard the arguments, obviously as to

23  Mr. Jones and Mr. Stevens.

24          The guidelines for Mr. Bezroukoff call for a term of

25  imprisonment of 6 to 12 months.  The Court is required to

1  consider the guidelines and impose a sentence that is

2  sufficient, but not greater than necessary, to reflect the

3  seriousness of the offense, to promote respect for the law, to

4  provide just punishment, to provide adequate deterrence not

5  just to Mr. Bezroukoff, because I think we can all agree that

6  Mr. Bezroukoff needs no specific deterrence, but also to

7  accomplish general deterrence, and also to protect the public.

8  Another factor that I think doesn't weigh heavily in this case

9  because I don't think the public needs protection from further

10  crimes by Mr. Bezroukoff.

11       And given Mr. Bezroukoff's much more significant role

12  in the offense conduct, I fully understand why the government

13  seeks to treat him differently.  I think a good argument could

14  be made that the recommendation of probation is a surprisingly

15  light sanction given Mr. Bezroukoff's offense conduct.

16       And so I'm supposed to look at the nature and the

17  circumstances of the offense and the history and

18  characteristics of the defendant when I determine what sentence

19  is sufficient, but not greater than necessary, to accomplish

20  those statutory purposes of sentencing that I've just described

21  that really are in play here:  seriousness of the offense,

22  respect for the law, and just punishment.

23       And given Mr. Bezroukoff's role in the offense,

24  certainly a greater sanction than that which the Court has

25  imposed as to the other defendants and intends to impose as to

1    Mr. Funes would be warranted to promote respect for the law, to

2    reflect the seriousness of the offense, and to provide just

3    punishment.

4         But the Court's consideration isn't limited to the

5    nature and the circumstances of the offense.  The Court has to

6    consider the history and characteristics of the defendant.  And

7    I am persuaded that Mr. Bezroukoff's participation in this

8    offense conduct was likely precipitated by the effects of his

9    military service, which distinguishes him from the other

10   defendants that were sentenced yesterday that were simply drawn

11   to easy money.  I think that Mr. Bezroukoff's military service

12   and his diagnosed PTSD are characteristics of the defendant

13   that convince me that additional supervision with respect to

14   this particular defendant is not necessary to reflect the

15   seriousness of the offense or to promote respect for the law or

16   provide just punishment.

17        Mr. Bezroukoff practically begged the Court to

18   sentence him three years ago.  Mr. Bezroukoff wanted to be

19   sentenced the day he testified at trial.  That was the reason

20   that I went ahead with the sentencings in November of 2021,

21   against my better judgment.  But in the interim, Mr. Bezroukoff

22   has served, like all of the defendants, an additional three

23   years waiting to determine what his fate was going to be.  And

24   he described to me both at the sentencing hearing and at the

25   trial the effects of that.

1        And I also recognize that Mr. Bezroukoff is not

2  wrong:  that if there were a veterans court in Middle Florida,

3  his case might have turned out differently.

4        And so I want to make clear that this is a very

5  serious offense.  The conduct of both of you was absolutely

6  illegal and absolutely wrong.  And the fact that I'm not going

7  to impose any additional sanction beyond what has already --

8  what you've already lived for isn't to suggest that I think the

9  prosecution wasn't a righteous prosecution.  It's not to

10  suggest that it wasn't a serious offense.  It's just a

11  recognition of the fact that over the last about nine years --

12  the offense conduct was 2014 to 2015, so almost ten years --

13  the sanction has been enough.

14        I do not criticize Mr. Coolican for requesting an

15  additional term of probation with regard to Mr. Bezroukoff

16  because I do think his conduct is greater.  But I also think

17  that the mitigation that Mr. Bezroukoff presents the Court with

18  is greater than that seen by any of the defendants yesterday

19  and greater than I anticipate seeing later in the week.

20        And so for all of those reasons, while it is a closer

21  call for the purposes of sentencing that are at play here, I am

22  convinced that with regard to Jeremiah Bezroukoff, no

23  additional sanction is necessary to accomplish those things.

24  The felony conviction, that he cannot do anything about, the

25  period of supervision that he's already undergone, the waiting

1    game that he has described, I'm convinced that that's enough

2    for this period of what has been an otherwise law-abiding

3    existence.  And so that's the sentence that I intend to impose

4    at this time.

5           May I have counsel and the defendants at the podium,

6    please.

7           The Court has asked why judgment should not be

8    pronounced.  I have been given no cause.  I've heard from

9    counsel; I've heard from both Mr. Bezroukoff and Mr. Funes; and

10   I have reviewed the presentence reports.

11          For the reasons that I have just explained, pursuant

12   to Title 18, United States Code, Sections 3551 and 3553, it is

13   the judgment of the Court that the defendants, Jeremiah

14   Bezroukoff and David Funes, are each committed to the custody

15   of the Bureau of Prisons to be imprisoned for a period of time

16   served.

17          The Court will not impose any term of supervision to

18   follow.

19          You have been convicted of felony offenses;

20   therefore, you must submit to the collection of DNA.  And

21   Counsel, it is incumbent upon you to take these gentlemen down

22   to the marshal's office to accomplish that.

23          For the reasons I previously explained, restitution

24   is otherwise mandatory, but the Court does not order

25   restitution in this case because determining the amount of

1   restitution relating to each individual defendant and the
2   defendants' causal connection to the victim's losses is overly
3   complex.  I've given the United States an opportunity to
4   request that I continue the restitution matter to another day,
5   and the United States has indicated that it does not request
6   such a continuance.  And so given my inability to determine the
7   appropriate amount of restitution that is causally related to
8   each defendant, I decline to award restitution at this time.
9   However, I do grant the motions for forfeiture money judgment
10  to the extent that a forfeiture money judgment will be entered
11  as to Mr. Bezroukoff in the amount of $947,343.61; and as to
12  Mr. Funes, $369,592.79.
13          The Court waives the imposition of fines based on
14  these gentlemen's financial circumstances.  However, each
15  gentleman has been convicted of three felony offenses;
16  therefore, there are mandatory special assessments of $300,
17  which are imposed as to each defendant.
18          (The courtroom deputy confers with the judge.)
19          THE COURT:  Oh, yes, I did.  So Madam Deputy reminds
20  me that as to Mr. Bezroukoff, I've imposed a term of -- a
21  sentence of time served.  That is time served as to Counts One,
22  Two, and Four, all such terms to run concurrently.  And as to
23  Mr. Funes, it is time served as to Counts One, Three, and Five,
24  all such terms to run concurrently with no supervision to
25  follow as to any of those counts.

1      I have varied downward from the guidelines for both

2  Mr. Bezroukoff and Mr. Funes.  I've explained my reasons for

3  doing so.  Each of these defendants presents significant

4  mitigating factors that are markedly different than those that

5  were presented in yesterday's sentencings and which in the

6  Court's view warrant against the imposition of any term of

7  imprisonment.  I readily conclude that a term of imprisonment

8  in this case, under these circumstances, and given the history

9  and characteristics presented by these defendants, would fail

10  to advance the purposes of sentencing.

11      And so for the reasons I explained earlier, I am of

12  the view that the sentence of time served with no supervision

13  to follow in light of the last five to six years on supervision

14  without any violations and also the collateral consequences

15  attendant with the felony convictions are entirely sufficient,

16  but not greater than necessary, to satisfy the statutory

17  purposes of sentencing as to these defendants.

18      Mr. Coolican, I looked back, and I think I confirmed

19  that they have plea agreements, but there are no charges

20  dismissed.  They pled to all the charges; is that right?

21      MR. COOLICAN:  It is, Your Honor.

22      THE COURT:  Okay.  So the Court accepts the plea

23  agreement as to each of these gentlemen because the plea

24  agreements adequately reflect the seriousness of their offense

25  conduct and does not undermine the statutory purposes of

1   sentencing.

2       Gentlemen, each of you has the right to appeal the

3   Court's sentence.  If you wish to pursue an appeal you have to

4   file a Notice of Appeal within 14 days.  The government also

5   has the right to appeal.  You are entitled to be represented by

6   an attorney in any appeal that's taken.  And if you can't

7   afford one, the Court will appoint one to represent you at no

8   cost to you.

9       Mr. Bezroukoff, do you understand your appeal rights?

10      DEFENDANT BEZROUKOFF:  I do, Your Honor.

11      THE COURT:  All right.  Do you have any questions for

12  me?

13      DEFENDANT BEZROUKOFF:  No, Your Honor.

14      THE COURT:  Mr. Funes, do you understand the appeal

15  rights I've just explained?

16      DEFENDANT FUNES:  Yes, Your Honor.

17      THE COURT:  Do you have any questions?

18      DEFENDANT FUNES:  No, Your Honor.

19      THE COURT:  Mr. Makofka, any objection to the

20  sentence or the manner in which it was imposed as to Mr. Funes?

21      MR. MAKOFKA:  No, Your Honor.

22      THE COURT:  Mr. Mairs, as to Mr. Bezroukoff, any

23  objection to the sentence or the manner in which it was

24  imposed?

25      MR. MAIRS:  No, Your Honor.

1    THE COURT:  Mr. Coolican, I'll do them separately.

2    As to Mr. Funes, any objection to the sentence or the

3    manner in which it was imposed?

4    MR. COOLICAN:  No, Your Honor.

5    THE COURT:  And as to Mr. Bezroukoff?

6    MR. COOLICAN:  No, Your Honor.

7    THE COURT:  All right.  So gentlemen, what this means

8    is that you'll go downstairs to the marshals and you'll

9    complete the collection of DNA and then you'll walk out of this

10    courthouse and this chapter of your life will be done.

11    I echo what I said earlier:  the fact that we're done

12    doesn't mean this wasn't really bad.  But it means that you've

13    paid your debt to society, you've accepted responsibility,

14    you've done what was asked of you, and it's time to put this

15    behind you.

16    As these attorneys have heard me say many times, good

17    people make mistakes all the time.  The fact that you got

18    involved in this and you made these mistakes doesn't mean

19    you're not good people, it just means you made a mistake.  It

20    doesn't define you and it doesn't have to define your life

21    going forward.  And I hope that you'll remember that as you go

22    on.

23    I wish you both the best because I will not see you

24    again.

25    DEFENDANT FUNES:  Thank you, Your Honor.

1          MR. MAIRS:  Thank you, Your Honor.

2          MR. MAKOFKA:  Thank you, Your Honor.

3          THE COURT:  We're in recess.

4          COURT SECURITY OFFICER:  All rise.

5      (The proceedings concluded at 11:09 a.m.)

6                      -    -    -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3    UNITED STATES DISTRICT COURT)

4    MIDDLE DISTRICT OF FLORIDA )

5

6         I hereby certify that the foregoing transcript is a true

7    and correct computer-aided transcription of my stenotype notes

8    taken at the time and place indicated herein.

9

10        DATED this 3rd day of January, 2025.

11

12                        /s/ Katharine M. Healey
                          Katharine M. Healey, RPR, RMR, CRR, FPR-C
13                        Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25